UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA A. R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02552-DLP-TWP |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**O**RDER

Plaintiff Andrea A. R. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g); 1383(c). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

I. **P**ROCEDURAL **H**ISTORY

On September 29, 2017, Andrea filed her application for Title II DIB. (Dkt. 13-2 at 4-5, R. 197-198). Andrea alleged disability resulting from failed back syndrome, status post four back surgeries; anxiety; depression; post-traumatic stress disorder ("PTSD"); irritable bowel syndrome ("IBS"); migraines; polycystic ovarian syndrome; and an enlarged thyroid. (Dkt. 13-6 at 5, R. 328). The Social Security Administration ("SSA") denied Andrea's claim initially on January 8, 2018, (Dkt. 13-3 at 17, R. 103), and on reconsideration on March 27, 2018. (Id. at 34, R.

1

120). On April 11, 2018, Andrea filed a request for a hearing, which was granted. (Dkt. 13-4 at 22, R. 141).

On July 29, 2019, Administrative Law Judge ("ALJ") Monica LaPolt conducted a hearing in Indianapolis, Indiana with Plaintiff and her counsel appearing in person, and vocational expert Matthew C. Lampley participating by phone. (Dkt. 13-2 at 63, R. 62). On October 2, 2019, ALJ LaPolt issued an unfavorable decision finding that Andrea was not disabled. (Id. at 17-33, R. 16-32). On December 4, 2019, the SSA received Andrea's appeal of the ALJ's decision. (Dkt. 13-4 at 74-75, R. 193-94). On July 29, 2020, the Appeals Council denied Andrea's request for review, making the ALJ's decision final. (Dkt. 13-2 at 2-6, R. 1-5). Andrea now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g); 1383(c).

## II.  STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant

numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01

3

(7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is

not whether Andrea is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Andrea was 29 years old when she filed the application under review. (Dkt. 13-2 at 64, R. 63). She has a high school education. (Dkt. 13-6 at 6, R. 329). She has worked as a pharmacy technician, medical assistant, and warehouse traffic supervisor. (Dkt. 13-2 at 31, R. 30).

#### B. **ALJ Decision**

In determining whether Andrea qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Andrea was not disabled. (Dkt. 13-2 at 17-33 R. 16-32). At Step One, the ALJ found that Andrea had not engaged in substantial gainful activity since the alleged onset date of May 30, 2016. (Id. at 19, R. 18).

At Step Two, the ALJ found that Andrea suffered from medically determinable severe impairments of failed back syndrome and obesity. (Id.). The ALJ also found that Andrea suffered from the nonsevere physical impairments of irritable bowel syndrome; migraines; gastroesophageal reflux disease ("GERD"); polycystic ovarian syndrome; and an enlarged thyroid. (Id.). The ALJ concluded that Andrea has the nonsevere mental impairments of depression, anxiety, and post-traumatic stress disorder ("PTSD"). (Id. at 20, R. 19).

As to the "paragraph B" criteria, the ALJ found that Andrea had a mild limitation in all four areas: understanding, remembering or applying information;

6

interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Id. at 21-22, R. 20-21).

At Step Three, the ALJ found that Andrea's impairments did not meet or medically equal the severity of one of the impairments in the Listings. (Dkt. 13-2 at 22, R. 21). In reaching this determination, the ALJ considered Listing 1.04 (Id. at 21-22, R. 17-18 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526)).

After Step Three but before Step Four, the ALJ found that Andrea had the RFC "to perform light work as defined in 20 CFR 404.1567(b)" with the following additional limitations: occasional climbing of ramps and stairs; never climbing of ladders, ropes, or scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling. (Dkt. 13-2 at 23, R. 22).

At Step Four, relying on the vocational expert's testimony, the ALJ determined that Andrea is able to perform her past relevant work as a pharmacy technician and medical assistant. (Id. at 31-32, R. 30-31). The ALJ concluded that Andrea was not disabled. (Id. at 32, R. 31).

## IV. ANALYSIS

Andrea argues that this matter should be remanded because (1) the ALJ failed to adequately explain her rejection of the functional capacity evaluation examiner's medical opinion and (2) the ALJ offered a faulty assessment of Plaintiff's credibility. (Dkt. 19 at 1). The Court will address each argument in turn.

### A. Functional Capacity Evaluation

First, Andrea argues that the ALJ erred when evaluating a functional capacity examinator's opinion. (Dkt. 19 at 9-14). In response, the Commissioner maintains that the ALJ's findings were supported by substantial evidence. (Dkt. 23 at 7-11).

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). This so called "treating physician rule," however, was eliminated for claims, such as Andrea's, filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. § 404.1520. . . (2017)." *Id*. The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c.

When considering the persuasiveness of any medical opinion, an ALJ must now consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of Social Security policies. *See Inman v. Saul*, No. 1:20-cv-231-DRL, 2021 WL 4079293, at *2 (N.D.

Ind. Sept. 7, 2021). The most important factors are the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *Tammy M. v. Saul*, No. 2:20-cv-285, 2021 WL 2451907 (N.D. Ind. June 16, 2021).

> The ALJ referenced the functional capacity evaluation as follows:
>
> The claimant underwent a functional capacity evaluation on June 11, 2019 . . . . The assessment/summary indicated that the claimant was pleasant and cooperative throughout testing which lasted 3 hours and 15 minutes . . . . The evaluator noted that the claimant drove to the clinic and did not use any assistive device for external support for ambulation or mobility. Her efforts were viewed as mixed during testing, with 2 of the 6 tests indicating invalid tests and possible submaximal performance. There were also minimal to moderate discrepancies in the amount of weight lifted between some of the similar static and dynamic lift tests performed. The evaluator noted that due to the claimant's perceived/reported high levels of back and leg pain, she would perform best in an environment where she could alter/control her position at will, and where prolonged sitting, standing, and walking could be eliminated. The evaluator further opined that for the above reasons, the claimant would have significant difficulty keeping pacing in a competitive work environment and the Physical Demand Classification of Worker would most appropriately be rated no higher than sedentary to light.
>
> I find that the functional capacity evaluation is persuasive in that the evaluator personally examined and administered the testing needed for determining the claimant's residual functional capacity, which was found to be no higher than sedentary to light. However, the opinion that the claimant would have significant difficulty keeping pace in a competitive work environment is not supported by the testing, particularly the notation of 2 invalid tests and possible submaximal performance. I find this document persuasive to the extent that it supports a limited range of light work.

(Dkt. 13-2 at 31, R. 30). Plaintiff maintains that the ALJ neither adequately considered the consistency nor supportability of the functional capacity examiner's opinion, and that the ALJ improperly interpreted the results of the testing in order to discredit the examiner's opinion. (Dkt. 19 at 9-14).

First, the Court notes that the ALJ gave a selective recounting of the functional capacity examiner's analysis and conclusions of Andrea's physical performance testing. Andrea had to stop the Valpar Small Parts Assembly Test approximately 9 minutes and 15 seconds into the 20 minute test due to low back and leg pain; immediately after stopping the test, Andrea had to go to the restroom to vomit, informing the examiner that it was not unusual for her to vomit when her pain was severe. (Dkt. 13-9 at 34, R. 1084). Andrea's standing tolerance was also limited during the small parts assembly test, and she demonstrated significant outward signs of pain and discomfort, including postural changes, weight shifting, squatting, and stretching. (Id.). While Andrea was completing the endurance testing, she experienced bilateral foot numbness, tingling, and burning, and had to hold onto the railing for external support when climbing the stairs. (Id.). During the material handling testing, the examiner acknowledged Andrea's abilities were limited by her "perceived/reported high levels of low back/bilateral upper extremity pain, burning pain/paresthesias in bilateral legs/feet, decreased bilateral upper and lower extremity strength, and her intolerance to sustained activity in both sitting and standing, and in the postures required to engage in material handling tasks." (Id. at 35, R. 1085).

The functional capacity examiner concluded that 4 of the 6 static lifting tests were valid, with 2 of the 6 tests indicating invalid results and possible submaximal performance. (Id.). The examiner explained there were minimal to moderate discrepancies in the amount of weight lifted between some of the similar static and dynamic lift tests that were performed. (Id.). Nevertheless, the functional capacity examiner opined that Andrea would encounter significant difficulty attempting to maintain sitting and standing postures for extended periods of time, and that she would be at a risk for falls with attempts to climb, balance, crawl, squat, and stoop with work activities due to her decreased balance and decreased use of correct body mechanics. (Id.). The functional capacity examiner did conclude, as the ALJ noted, that Andrea would have a limited ability to actively participate in strenuous and/or fast-paced work, would perform best in an environment where she can alter/control her position at will, and where prolonged sitting, standing, and walking can be eliminated. The examiner, however, provided additional reasons beyond those cited by the ALJ to support those conclusions: the examiner specifically cited to Andrea's perceived/reported high levels of low back and bilateral lower extremity pain; decreased tolerance for prolonged sitting, standing, and walking; bilateral lower extremity paresthesias; decreased endurance and activity tolerance; and decreased balance and use of correct body mechanics with increased lifting heights and weights. (Id.). For all of these reasons, the examiner concluded that Andrea would have significant difficulty keeping pace in a competitive work environment. (Id.).

11

The functional capacity examiner offered four distinct opinions as to Andrea's ability to work: Andrea would (1) have difficulty keeping pace in a competitive work environment; (2) be limited to no higher than sedentary to light work; (3) perform best where she can alter/control her position at will; and (4) be unable to engage in prolonged sitting, standing, or walking. (Id.). The Court notes that the ALJ only acknowledged the first two of these four opinions. The ALJ found that the limitation to sedentary to light work was persuasive given the examiner's personal and thorough testing, but concluded that the examiner's opinion regarding Andrea's ability to maintain pace was not persuasive due to the two invalid tests and possible submaximal performance. (Dkt. 13-2 at 31, R. 30). The ALJ then concludes by noting: "I find this document persuasive to the extent that it supports a limited range of light work." (Id.).

As noted previously, with the change in regulations regarding how ALJs consider medical opinions, ALJs are required to weigh the consistency and supportability of medical opinions. Here, the ALJ did neither. Although the functional capacity examiner took into account Andrea's two invalid tests and potentially submaximal performance on two of the tests when drawing conclusions about Andrea's ability to work, the ALJ then adopted the examiner's non-disabling finding of a limitation to sedentary to light work; ignored two potentially disabling findings of changing sitting/standing positions at will and an inability to engage in prolonged sitting, standing, and walking; and discounted the examiner's remaining disabling opinion of difficulty keeping pace by pointing to the two invalid test

12

results already accounted for by the examiner. The ALJ did so without considering or providing any analysis or explanation as to the consistency and supportability of any of the examiner's four medical opinions. This was clear error, as the Court is left with no opportunity for meaningful review.

Plaintiff points out that a limitation on maintaining pace may result in necessary functional limitations, including time off-task. The ALJ did not include a limitation for time off-task in Andrea's RFC, but at the hearing the ALJ solicited from the vocational expert his opinion concerning Plaintiff's off-task time, which indicates that the ALJ did consider this issue. (Dkt. 13-2 at 84-85, R. 83-84); *see Kukec v. Berryhill*, No. 16 CV 9805, 2017 WL 5191872, at *3 (N.D. Ill. Nov. 9, 2017) (ALJ's questioning of vocational expert on off-task time indicates ALJ's consideration of issue for RFC, but error occurred when ALJ included no analysis of off-task time in opinion); *see also Diaz v. Berryhill*, No. 2:17-cv-314, 2018 WL 4627218, at *8 (N.D. Ind. Sept. 27, 2018) (same). Specifically, the vocational expert testified that a hypothetical individual who was off-task 10% of the day or ten minutes or more per hour would not be eligible for any employment. (Dkt. 13-2 at 84-85, R. 83-84). The ALJ's error occurs by considering the issue of off-task time, but then failing to provide any analysis of that issue in her opinion. Nowhere in the ALJ's opinion does she address this potential functional limitation, or any limitation related to maintaining pace, either one of which could be case dispositive and result in a finding that Andrea was disabled. The ALJ may have decided that no limitation was warranted based on the record at hand, but this Court is unable

to ascertain whether the ALJ adequately considered these two potential RFC limitations. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) (citing *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019).

The Commissioner argues that the ALJ was correct in discounting the functional examiner's opinion because the opinions offered were extreme, and that any error was harmless because the examiner concluded that Andrea could perform sedentary to light work and the vocational expert provided examples of sedentary work that Plaintiff could perform within the ALJ's assigned RFC. (Dkt. 23 at 9-10). First, the ALJ never indicated that she found the examiner's opinion to be extreme. Thus, this justification was not relied upon by the ALJ and the Court cannot consider it now. The Court's review is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization).

Second, although it is true that the vocational expert provided representative sedentary jobs that would fit the ALJ's ultimate RFC, as discussed above, the opinion of the functional capacity examiner was not properly evaluated and, thus, it is not possible for this Court to determine whether the vocational expert's testimony adequately addressed the RFC.

Accordingly, the ALJ failed to create a logical bridge between the evidence and her conclusions. Remand is thus required.

### B. Subjective Symptoms

Andrea next argues that the ALJ engaged in an improper 16-3p credibility analysis. (Dkt. 19 at 15-18; Dkt. 25 at 4-5). The Commissioner maintains that the ALJ's analysis is supported by substantial evidence. (Dkt. 23 at 11-15).

"In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms.[1] First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain,

---

[1] SSR 16-3p became effective on March 28, 2016, (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *13, replacing SSR 96-7p, and requires an ALJ to assess a claimant's subjective symptoms rather than assessing his "credibility." By eliminating the term "credibility," the SSA makes clear that the "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029 at *1. The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges are not in the business of impeaching a claimant's character." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester*, 920 F.3d at 510 (internal quotation marks and citation omitted). To satisfy this standard, the ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano,* 556 F.3d at 562. An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Cassandra S. v. Berryhill*, No. 18-00328, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019).

At step two of the Rule 16-3p analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 404.1529(c)(3). Although the Court will defer to an ALJ's subjective symptom finding that is not patently wrong, the ALJ must still adequately explain his subjective symptom evaluation "by discussing specific reasons supported by the record." *Pepper*, 712 F.3d at 367. Without this discussion, the Court is unable to determine whether the ALJ reached

16

her decision in a rational manner, logically based on her specific findings and the evidence in the record. *Murphy*, 759 F.3d at 816 (internal quotations omitted); *see also* SSR 16-3p, at *9. When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8.

Plaintiff argues that the ALJ erred by focusing heavily on the opinion of Plaintiff's long-term disability benefit insurer when weighing her credibility. (Dkt. 19 at 15-18; Dkt. 25 at 4-5). Specifically, Plaintiff takes issue with the ALJ's reliance on "two independent observations of [Andrea's] activities" conducted by the insurance company in 2018. (Id.). Furthermore, the Plaintiff contends that the ALJ essentially substituted the credibility analysis conducted by the self-interested private insurer for her own. (Id.). In response, the Commissioner maintains that the ALJ adequately considered the 16-3p factors, including the private insurer's opinion, when weighing Andrea's credibility. (Dkt. 23 at 11-15).

The ALJ summarized Andrea's medical history and testimony at the hearing, and then concluded that the intensity, persistence and limited effects of Andrea's claimed symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Dkt. 13-2 at 24-31, R. 23-30). While it is true that the ALJ does find the private insurer's opinion regarding Andrea's functional capabilities

17

persuasive and relies on it somewhat heavily, the Plaintiff's contention that the ALJ solely relies on that opinion to discredit the Plaintiff's symptoms is not well-taken. The ALJ explained her consideration of Plaintiff's treatment history, medications, treatment other than medications, clinical exams and objective medical evidence, activities of daily living, and the opinions in the record. (Id.). Moreover, as required by 20 C.F.R. § 404.1504, the ALJ considered the relevant supporting evidence underlying the insurer's opinion as well. (Id.). The ALJ provided sufficient reasons, supported by the record, to discount the Plaintiff's subjective symptoms and, thus, the Court cannot find the ALJ's credibility analysis was patently wrong. Accordingly, this issue is affirmed.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 3/21/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record via email.